IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.                                                             CIV 12-0482 LH/KBM
                                                              CR 07-0701 LH/KBM

JESUS MANUEL DIAZ,

    Defendant/Movant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO EXPAND THE RECORD and
## ADOPTING REPORT AND RECOMMENDATIONS

THIS MATTER comes before the Court on Defendant/Movant Jesus Manuel Diaz's Motion to Expand the Record Pursuant to Rule 7 of the Rules Governing 2255 Proceedings for the United States District Courts (*Doc. 42*)[1] filed March 17, 2014, which was fully briefed on March 30, 2014,[2] and his Objections to the Chief Magistrate Judge's Report and Recommendations[3] (*Doc. 46*) filed March 28, 2014.  The Court has reviewed the briefing of the parties, conducted a *de novo* review of the record, and finds that Diaz's Motion to Expand the Record is not well taken and that his objections to the R & R are without merit.

---

[1] In its response, the United States construes Diaz's motion as a request for discovery; however, Diaz has not complied with the Rules for requesting discovery and therefore, the Court will not construe the motion as such.  *See*, R. Gov'g § 2255 Cases, Rule 6 (b) (requiring that the request "must also include any proposed interrogatories and requests for admission, and must specify any requested documents.").

[2] No reply was filed by Diaz and none is required.  D.N.M.LR-Civ. 7.4(a) ("A reply must be served and filed within fourteen (14) calendar days after service of the response.")

[3] The Chief Magistrate Judge's Report and Recommendation (*Doc. 39*) will be referred to hereinafter as "R & R."

I. <u>Motion to Expand the Record</u>

Diaz seeks to expand the record to include "information regarding the illegal data funnel from the NSA [National Security Agency] through the DEA's [Drug Enforcement Agency] SOD [Special Operations Division] to local and state police for non-national security purposes" so that Diaz may "be afforded the opportunity to ascertain whether his case was one of the cases where this illegal data funnel took place." *Doc. 42* at 11.

Rule 7(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts allows for the expansion of the record to include materials relating to the Section 2255 motion. These materials may include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits also may be submitted and considered as part of the record." Rules Governing § 2255 Cases, Rule 7(b).

Diaz recites news articles, commentary, and examples of other cases outside of this district in support of his position that the DEA has been funneling NSA data to certain local law enforcement agencies. Diaz argues that:

> It is ***likely*** that Mr. Diaz's apprehension at the Gallup POE was the tainted fruit of illegal use of NSA eavesdropping, which was accessed by the DEA, which relayed the information to the Motor Transportation Division of the New Mexico Department of Public Safety, in accordance with the shady practices that have recently come to light.

*Doc. 42* at 1 (emphasis added). However, Diaz does not present any evidence that Officer Smid, or any of the officers involved in this case, were given information by any federal agency, such as information obtained through eavesdropping by NSA, as described in his examples.

On the other hand, the United States submits a sworn statement from Officer

Smid that states:

> During the arrest of Mr. Diaz on March 19, 2007, I had no prior knowledge of Mr. Diaz having control of the marijuana in the trailer he was hauling. I had no prior knowledge from any federal entity, state, county, or city entity of Mr. Diaz, his tractor, his trailer, nor the marijuana that was seized from the trailer that Mr. Diaz was in control of during this time frame. I did not receive any phone calls from any confidential informants either. My contact was neither planned, nor scheduled by any parties who may be considered before, during, or after the arrest of Mr. Diaz.

*Doc. 47-1*. In light of this testimony, Diaz's belief that he was a victim of a conspiracy between the federal government and the New Mexico Motor Transportation Division is no more than rank speculation. News articles and the like do not assist the Court in determining whether Diaz suffered a violation of his constitutional rights or whether the Chief Magistrate Judge erred in her conclusions. Accordingly, Diaz' motion to expand the record will be denied.

II. <u>Objections to Chief Magistrate Judge's R & R</u>

Diaz urges this Court to reject the R & R because the Magistrate Judge: (1) ignored new evidence; (2) did not address Diaz's arguments; (3) failed to find that consent of the search of the trailer was "tainted by a prior illegal search"; and (4) was mistaken about key facts. *Doc. 46* at 2. Although the Chief Magistrate Judge's R & R does contain some errors, those errors do not change the result, as she was correct in her ultimate decision that this case should be dismissed.

A. <u>Standard of Review</u>

When a party files timely written objections to the Magistrate Judge's recommendation, the district court will conduct a *de novo* review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C.A. § 636(C). *De novo* review requires the district court to

consider relevant evidence of record and not merely review the Magistrate Judge's recommendation. *In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995). "[A] party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop., with Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Following a *de novo* review of the evidence in the record, the Court finds that Diaz's objections are without merit and will adopt the R & R.

B. Discussion

1. Failure to Address New Evidence

The bulk of Diaz's claim for habeas relief rests on the argument that the administrative Level II safety inspection was a mere pretext for a criminal investigation and that trial counsel was ineffective for not pursuing a suppression motion on that basis. *Doc 46* at 4. Diaz contends that the Magistrate Judge erred by ignoring evidence brought for the first time in this habeas action that "Officer Smid never conducted a Level II safety inspection." *Doc. 46* at 4.

Specifically, Diaz faults the Magistrate Judge for failing to address the affidavit of his trucking industry expert. *Doc. 46* at 5–8. Diaz apparently concedes that by entering the State of New Mexico, the truck was lawfully subject to a safety inspection by authorized officers at the Gallup Port of Entry. Rather, Diaz relies on the expert's affidavit to point to perceived irregularities in the way that Officer Smid conducted his inspection when compared with a "typical" Level II safety inspection.

Diaz maintains the expert's testimony demonstrates that Officer Smid's

inspection was sham, performed not for the legitimate purpose of administrative safety checks, but instead with a motive to obtain evidence of criminal activity. Diaz contends that "Officer Smid repeatedly went beyond the steps of a Level II safety inspection and made observations that were later relied on as justification of the second and more detailed search of the trailer's contents." *Doc. 17* at 32. "Without these observations," Diaz argues, "there is not sufficient indicia of criminal activity to constitute reasonable suspicion [and] the search would not have been justifiable." *Id.*

The Magistrate Judge also did not address the affidavit of an audio recording expert whose analysis, Diaz asserts, demonstrates that the government witnesses lied in testimony in the district court and that his trial counsel failed to point it out and seek appropriate relief under *Brady v. Maryland*, 373 U.S. 83 (1963). *Doc. 17* at 46-54. The audio expert proclaims that two devices recorded Diaz's encounter with Officer Smid. *Cr. Doc.* 184. Officer Smid testified that he was not using a recording device during the encounter, so Diaz concludes that this testimony must be a lie and that trial counsel was ineffective in bringing this to the Court's attention as it would have impacted Officer Smid's credibility.

However, Diaz is unable to confirm that Officer Smid did, in fact, lie about whether he had a recording device. The expert affidavit only confirms that two devices were recording at the Port of Entry. *Cr. Doc.* 184. Diaz merely speculates that one of the tapes was "***evidently*** in use by Officer Smid" and concludes that "one recording is on Officer Halona's device; the other is ***apparently*** on Officer Smid's device." *Doc. 17* at 52 (emphasis added).

Most importantly, these arguments ignore that one of the grounds for finding the

search to be lawful was not based on a finding of reasonable suspicion or probable cause; rather, the validity of the search was premised on Diaz's knowing and voluntary consent to the search.  Thus, any irregularities in the Level II inspection that the expert identifies were of no consequence to the ultimate question – whether the search uncovering the marijuana was supported by valid consent.  The audio expert's belief that two rather than one recording devices were used during the encounter at the port of entry similarly fails to attack the Court's finding that valid consent was given for the search.

Thus, the Magistrate Judge correctly found that Diaz could not establish actual prejudice for trial counsel's failure to bring those arguments.  Indeed, a court need not address whether counsel's performance was deficient if defendant fails to prove actual prejudice.  *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 2069 (1984) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

As the Magistrate Judge explained, Officer Smid had concluded the inspection before requesting consent to search the trailer, and the marijuana was discovered only after the officer had received permission from Diaz for that search.  *Doc. 39* at 9.  Trial counsel's strategy to suppress the marijuana by attacking the validity of Diaz's consent to search therefore was reasonable under the circumstances.  It was only after a full evidentiary hearing that the Court expressly found that Diaz' consent was knowingly and voluntarily given.  *See Cr. Doc. 91* at 14-17.  With that finding, the motivation of Officer Smid in choosing to conduct a more thorough Level II safety inspection, as he admittedly was authorized to perform, is irrelevant, and any alleged "taint" on Diaz's

consent is without merit because his consent was found to be freely and voluntarily given. *Cr. Doc. 91* at 14 – 17.  This Court agrees with the Magistrate Judge that "because the marijuana was found during a valid consensual search, there is no reasonable probability that it would have been suppressed" had counsel argued that the administrative inspection was pretextual.[4]  *Doc. 39* at 10.

      2. <u>Fifth Amendment due process and Ninth Amendment retained rights</u>

As an initial matter, Diaz is highly critical of the magistrate judge's R & R for "believ[ing] that Mr. Diaz was basing [his] argument in part on the Eighth Amendment" rather than the Ninth Amendment "in spite of the absence of any reference to the Eighth Amendment in Mr. Diaz's supplemental brief in this regard."  *Doc. 46* at 16.  Yet in his Supplemental Brief, Diaz proclaims three times that "[h]is conviction and incarceration violate the Fifth Amendment guarantee of due process of law, the Sixth Amendment guarantee of a fair trial, and the **<u>Eighth Amendment prohibition against cruel and unusual punishment</u>**."  *Doc. 17* at 5, 7 and 8 (emphasis added).   If the Magistrate Judge misinterpreted Diaz's arguments, it is readily apparent that she was misled by these proclamations.  It now appears that Diaz' references to the Eighth Amendment were merely based on a claim of actual innocence such that any imposed punishment

---

[4] Moreover, the issue of whether an administrative search is a pretext for a criminal investigation arises in cases where the evidence used to convict the defendant is found <u>during</u> the administrative inspection.  *See, e.g., U.S. v. Johnson*, 408 F.3d 1313 (10th Cir. 2005) (Oklahoma City police officers found a firearm and ammunition during a warrantless administrative search of salvage yard which led to defendant's conviction for felon in possession of firearm and ammunition);  *U.S. v. Johnson*, 994 F.2d 740 (10th Cir. 1993) (federal agent accompanied state agents on a state-authorized administrative inspection of taxidermy shop and found evidence of federally-protected migratory birds that led to defendant's conviction).  The circumstances in this case differ from those cases because the marijuana used to convict Diaz was not found during the administrative investigation but during a subsequent consensual search.  The Court found after an evidentiary hearing that the Level II safety inspection was concluded prior to Officer Smid seeking and obtaining consent from Diaz to conduct a thorough search of the trailer.  *Cr. Doc. 91* at 4 – 5.

would be "cruel and unusual."

Diaz maintains that "the search of the trailer violated Mr. Diaz's right as protected under the **New Mexico** Constitution," citing to Article II, Section 10 of the New Mexico Constitution[5] and *State v. Ochoa*, 2009-NMCA-2002, 146 N.M. 32 (2009). *Doc. 46* at 19 (emphasis added). In *Ochoa*, the New Mexico Court of Appeals relied on the New Mexico Constitution to require suppression of evidence in state criminal proceedings that had resulted from the pretextual stop of a motor vehicle. *Id.* "In performing a pretextual traffic stop, a police officer is stopping the driver, 'not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving.'" *Id.* at 149 (quoting *State v. Ladson*, 979 P.2d 833, 837-38 (1999) (en banc)). The *Ochoa* court held that the state constitution requires that searches and seizures be reasonable based on the particular facts of each case. *Id.* In so ruling, the *Ochoa* court specifically rejected adoption of the federal standard that a technical violation of the traffic code automatically legitimizes a stop regardless of the officer's actual motivation in performing the stop.[6] *Id.* at 149-50. Under federal law, "[s]ubjective intentions play no

---

[5] Article II, Section 10 of the New Mexico State Constitution states:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

N.M. Const. art. II, § 10.

[6] This Court notes that traffic stops and administrative investigations are birds of a different feather, and the standards by which the courts analyze the validity of each are distinguishable. In order to make a legal traffic stop, an officer must have reasonable suspicion that a crime or traffic violation has been or is being committed. *Id.* at 149. On the other hand, there is no reasonable suspicion requirement to conduct an administrative investigation, as long as the regulatory scheme invoked passes the three-part test set forth by the Supreme Court in *New York v. Burger*, 482 U.S. 691, 107 S. Ct. 2636 (1987). *See State v. Montoya*, 116 N.M. 297 (1993) ("if certain criteria are met, closely regulated industries with a history of pervasive government regulation may be inspected without a warrant") (citing *Burger*, 482 U.S. at 702-03). "First, there must be a substantial government interest that informs the regulatory scheme pursuant

role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

Diaz acknowledges that Article II, Section 10 of the New Mexico Constitution "ordinarily applies only to New Mexico state and local law enforcement officers," but he further contends that this protection "applies to the Government in this case through the due process clause of the Fifth Amendment and the retained rights clause of the Ninth Amendment." *Doc. 17* at 56-57.  Thus, Diaz argues, his interest in "freedom from unreasonable searches and seizures" as protected by Article II, Section 10 of the New Mexico Constitution "was infringed by the Government when it introduced evidence in its case in chief against Mr. Diaz . . . that was obtained by New Mexico law enforcement officials in violation of the New Mexico Constitution." *Doc. 46* at 20 (emphasis added). However, Diaz fails to cite to any cases so holding and for good reason.

If Diaz's argument had merit, the parameters of the protection provided by the United States Constitution for unreasonable search and seizures could be overridden by a potential multitude of inconsistent state constitutional provisions.  In the State of New Mexico alone, practices lawful under the Fourth Amendment of the federal constitution would be prohibited under Diaz's theory.  For instance, as the New Mexico Court of Appeals has noted,

> [u]nder federal law, border patrol agents do not need to obtain a warrant to search a lawfully stopped vehicle if there is probable cause to believe that the vehicle contained evidence of a crime. U.S.C.A. Const. Amend. 4.  We recognize that under federal law,

---

to which the inspection is made.  Second, the warrantless inspections must be necessary to further the regulatory scheme . . . .  Finally, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant." *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1210 (10th Cir. 2001) (quoting *Burger*, 482 U.S. at 702-03).  Diaz does not contend that New Mexico's scheme for conducting Level II safety inspections does not pass this test.

> border patrol agents do not need to obtain a warrant to search a lawfully stopped vehicle if there is probable cause to believe that the vehicle contained evidence of a crime. *See California v. Acevedo*, 500 U.S. 565, 569, 575–76, 111 S. Ct. 1982, 114 L.Ed.2d 619 (1991). However, under the New Mexico Constitution, a warrantless search of an automobile requires both probable cause and exigent circumstances. N.M. Const. art. II, § 10; *Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1. Evidence obtained pursuant to a warrantless search of an automobile that does not meet the requirement of *Gomez*, can and will be excluded from use in state proceedings. *See State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 20, 130 N.M. 386, 25 P.3d 225 (holding that "our state constitution applies to evidence seized by federal agents when the State seeks to admit that evidence in state court").

*State v. Gallegos*, 2003-NMCA-079, 133 N.M. 838, 841, 70 P.3d 1277, 1280. If *Gallegos* was extended to apply to federal proceedings via the Fifth and Ninth Amendments to the United States Constitution – that is, suppression of evidence that had been <u>*lawfully*</u> obtained under the Fourth Amendment to the United States Constitution – a state could impermissibly limit evidence in federal prosecution. If Diaz's argument had merit, federal prosecutions arguably would require the exclusion of evidence obtained in the following circumstances: a warrantless search of an automobile even if the search was supported by probable cause (*Gallegos*); in a search pursuant to the issuance a warrant based solely on sworn oral testimony in the absence of a written affidavit (*Boyse*)[7]; or where a Border Patrol agent, in the absence of

---

[7] In *Boyse*, the New Mexico Court of Appeals found that Article II, Section 10 precluded admission of evidence obtained when the magistrate authorized a search over the telephone that was based on the investigator reading to him a typewritten statement of facts in support of probable cause. *See State v. Boyse*, 2011-NMCA-113, 150 N.M. 712, 265 P.3d 1285 *rev'd*, 2013-NMSC-024, 303 P.3d 830.

Although the New Mexico Supreme Court reversed, it did not hold that oral testimony alone could support issuance of a warrant: "We do not agree that the written statement has to be physically shown prior to the issuance of a warrant. Rather, the probable cause statement must be presented to the magistrate—either by audio, visual or other sensory means—by an officer, under oath, prior to issuance. **Such a procedure does not eliminate the requirement that the probable cause statement be in writing**, but rather provides flexibility, while still protecting the constitutional guarantees of privacy." *State v. Boyse*, 2013-NMSC-024, 303 P.3d 830, 834 (emphasis added). Rule 41(c)(2)(B) of the Federal Rules

reasonable suspicion of criminal activity, detains and questions a motorist after having asked about citizenship and immigration at a permanent checkpoint (*Cardenas-Alvarez*).

Indeed, the New Mexico Supreme Court expressly addressed the tension created when a state constitutional provision provides greater protection than does the federal constitution:

> Our application of state constitutional standards to determine the admissibility in state court of evidence seized by federal agents will not affect any prosecution that might be brought against Defendant in federal court, or otherwise circumscribe federal activities within our borders. *See, e.g., United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir.1994) ("[T]he state may exclude evidence in trials that would not be excluded by application of the Fourth Amendment. However, the state rule does not have to be applied in federal court."); *United States v. Pforzheimer*, 826 F.2d 200, 203 (2d Cir.1987) (refusing to apply state exclusionary rule in federal court); *United States v. Rose*, 806 F.2d 931, 932 (9th Cir.1986) ("The fact that Oregon sees fit to provide broader immunity is irrelevant where the question arises in federal court in response to a federal charge."). We acknowledge the supremacy of the federal government and encourage federal agents to continue to enforce the law in as vigilant a manner as the federal Constitution permits. When such vigilance violates the protections guaranteed by our state constitution, however, we will not abandon our guard of those protections in order to accommodate evidence thereby yielded. Although we do not claim the authority to constrain the activities of federal agents, we do possess the authority--and indeed the duty--to insulate our courts from evidence seized in contravention of our state's constitution.

*State v. Cardenas-Alvarez*, 2001-NMSC-017, 130 N.M. 386, 393-94, 25 P.3d 225, 232-33. Thus, the Court finds Diaz's Fifth or Ninth Amendment arguments to be unavailing and that they cannot serve as a basis to support habeas relief pursuant to Section 2255.

---

of Criminal Procedure, however, clearly permits a judge to "wholly or partially dispense with a written affidavit and base a warrant on sworn testimony if doing so is reasonable under the circumstances."

### 3. Key Facts

Finally, Diaz contends that the Magistrate Judge is mistaken about key facts and recites facts that were also reported by the Magistrate Judge.  For example, the R & R notes that Diaz did not own, load, or enter the trailer, but was only performing a "hook and drop." *Doc. 39* at 2, 4.  Diaz does not explain how the Magistrate Judge was mistaken in her recitation.  Diaz additionally argues that, "[p]icking up an enclosed and locked trailer for hauling across the country does not make one a 'sole occupant' as that term is used in the jury instruction and in the case law interpreting and applying that term."  *Doc. 46* at 25.  Diaz directs the Court to his briefing at *Cr. Doc. 167* at 1-2 and 5-9 and maintains that the Magistrate Judge failed to adequately address these issues. *Id.* The Court disagrees.

Diaz does not support his contention with a dictionary definition or any case law interpreting the jury instruction at issue that defines "sole occupant" in any other way than as defined by the Magistrate Judge.  Diaz cites one case interpreting the jury instruction at issue, *County Court of Ulster County v. Allen*, 442 U.S. 140 (1979).  In *Allen* there were several occupants in the vehicle stopped for a traffic violation.[8]  Given the multiple occupants, the *Allen* court did not have the occasion to define "sole occupant" and *Allen* does not assist Diaz in this matter.  The Magistrate Judge was not mistaken when she concluded that the trial court properly identified Diaz as the "sole occupant" of the tractor-trailer in the jury instruction.

---

[8] There were three adult males and a 16-year-old female traveling in a car when it was stopped for speeding by police officers.  *Id.* at 143.  An officer observed two large-caliber handguns located in the female's handbag in the front seating area and she admitted that they were hers.  *Id.*  A machine gun and over a pound of heroin were also discovered in the trunk of the car.  *Id.*  The driver had borrowed the car from his brother earlier that day.  *Id.*  The issue in the case was whether the male defendants "possessed" the two handguns.

III. Conclusion

Diaz does not support his Motion to Expand the Record with anything more than supposition that Diaz was stopped pursuant to a whisper stop program. Having performed the required *de novo* review, the Court concludes that Diaz's objections to the R & R lack merit.

IT IS HEREBY ORDERED that Diaz's Motion to Expand the Record (*Doc. 42*) is **denied.**

IT IS FURTHER ORDERED as follows:

1. Diaz's Objections to the Chief Magistrate Judge's Report and Recommendation are **overruled**;

2. The Court hereby adopts the Chief Magistrates Judge's Report and Recommendation *(Doc. 39)*;

3. Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is **denied**; and

4. A final order shall enter concurrently herewith.

_____
SENIOR UNITED STATES DISTRICT JUDGE